UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DENISE L. POLITO,

                    Plaintiff,                    17-CV-6499

          v.                                      **DECISION
                                                  and ORDER**

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---

## INTRODUCTION

Plaintiff Denise Polito ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner"), denying her applications for disability benefits and Supplemental Security Income. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. #10, 13.

## BACKGROUND

**A.    Procedural History**

On April 2, 2014, Plaintiff filed an application for Disability Insurance Benefits and on November 4, 2015, she filed an application for Supplemental Security Income, alleging disability as of January 9, 2014, due to arthritis and depression. T. 180-86.

Those applications were initially denied, T. 118-22, and Plaintiff attended a hearing, with counsel, before Administrative Law Judge ("ALJ") Julia Gibbs on December 8, 2015. T. 56-107. On February 18, 2016, the ALJ issued an unfavorable decision, T. 41-52, and the Appeals Council denied review on June 5, 2017, making the ALJ's determination the final decision of the Commissioner. T. 1-6. This action followed. Dkt. #1.

The issue before the Court is whether the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and free of legal error. See Pl. Mem. (Dkt. #11) 4-19; Comm'r Mem. (Dkt. #13-1) 13-28.

## B.    The ALJ's Decision

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since January 9, 2014; (2) she had the severe impairments of osteoarthritis in knees and obesity; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, except such jobs can be done either sitting or standing and allowing Plaintiff to

alternate positions without leaving the worksite or stopping work activity; (4) Plaintiff was unable to perform her past relevant work as a Medical Secretary and Bank Teller; and (5) considering Plaintiff's age, education, work experience, and RFC, she could perform the jobs of Inspector, Rental Clerk, or Ticket Seller. T. 46-52.

## DISCUSSION

### A. Scope of Review

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### B. RFC Finding

Plaintiff contends that the ALJ's RFC finding was deficient because: (1) she failed to provide a function-by-function assessment with respect to Plaintiff's ability to sit, stand, and walk; and (2) the RFC, as written, was consistent with sedentary, but not light work. Pl. Mem. 4-13.

Light work involves lifting no more than 20 pounds at a time, with frequent lifting or carrying of 10 pounds. 20 C.F.R.

§§ 404.1567(b), 416.967(b). Even though the weight lifted may be very little, a job in this category would require a great deal of walking or standing, or it may require sitting most of the time with some pushing and pulling of arm or leg controls. Id. Additionally, when an individual can perform light work, she can also generally do sedentary work, unless she has additional manipulative limitations, which were not found here. 20 C.F.R. §§ 404.1567(a), 416.967(a).

The ALJ did find additional limitations which restricted plaintiff to jobs that had the lifting requirements of light work but could be done either sitting or standing and would allow her to alternate positions without leaving the worksite or stopping work activity. T. 48.

At the administrative hearing, the ALJ asked a vocational expert about "light jobs that can be done either sitting or standing, so that the person can alternate between the two positions without leaving the worksite and without stopping job activities," for example, "jobs where there's a stool that the person can choose to use or not use." T. 98. The vocational expert then testified as to whether there were jobs in significant numbers in the national economy that could be done by someone with those restrictions and identified three "light work" jobs that could be performed with those limitations. Id. It is clear, then, from the hearing transcript and the ALJ's decision that the hypothetical was based upon Plaintiff's ability to change positions as needed or at

will and with required frequency. See Thomas v. Astrue, No. 11-CV-1057, 2013 WL 1337261, at *4 (W.D.N.Y. Mar. 29, 2013)(light work with "an option to sit or stand" sufficient statement of frequency); Miller v. Astrue, No. 11-CV-4103, 2013 WL 789232, *10 (E.D.N.Y. Mar. 1, 2013) ("option to sit-stand throughout the day" sufficient statement of frequency); Evans v. Astrue, No. 12-CV-6002, 2012 WL 6204219, *8 (W.D.N.Y. Dec. 12, 2012)("sit or stand alternatively" sufficient statement of frequency).

Plaintiff also claims that the assessed RFC, when combined with her testimony that she could stand for 10 minutes at a time before needing to sit, T. 86, is consistent with an RFC limitation for sedentary work. Pl. Mem. 7. The ALJ, however, did not find Plaintiff's statements regarding her limitation to be entirely credible, T. 49, and her testimony was contradicted by her family practitioner who indicated she would need to change positions "1-2 times per hour" and the balance of the record evidence. T. 50.

Where, as here, the ALJ's RFC finding is supported by substantial evidence, a more specific function-by-function assessment was not required. Cichocki v. Astrue, 729 F.3d 172, 174 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister

Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed."); see Campbell v. Astrue, 465 Fed. Appx. 4, 2012 WL 29321, *2 (2d. Cir. 2012) (although the ALJ did not discuss the claimant's ability to function in each area, substantial

evidence supported the ALJ's overall RFC finding). Remand is therefore not warranted on this basis.

## C.    **Treating Physician Rule**[1]

Plaintiff next contends that the ALJ failed to properly analyze the opinion of Plaintiff's treating physician. Pl. Mem. 10. Specifically, she challenges the ALJ's finding that Elenee Raudenbush, D.O., "does not have a treatment relationship with claimant," and "[her] conclusion that the claimant can occasionally lift or carry 5 to 10 pounds is based on the claimant's subjective complaint regarding hand pain." Pl. Mem. 13.

Dr. Raudenbush opined that Plaintiff was generally limited to sedentary work, could sit/stand/walk for 1 hour per day, changing positions 1 to 2 times per hour, could occasionally lift or carry 5-10 pounds, and had limitations doing repetitive reaching, handling, or fingering. She could occasionally bend and reach overhead, and never squat, crawl, or climb.  T. 351-57.

---

[1]In January, 2017, the SSA "revised its rules to eliminate the treating physician rule; as a result, ALJs are now to weigh all medical evaluations, regardless of their sources, on the basis of how well supported they are and their consistency with the remainder of the record." Cortese v. Comm'r of Soc. Sec., 2017 WL 4311133, at *3 n.2 (S.D.N.Y. Sept. 27, 2017); see Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5867-68 (Jan. 18, 2017). Because Plaintiff's claim was filed before March 27, 2017, the previous opinion evidence rule applies in this case. See 20 C.F.R. §§ 404.1527, 416.927.

Here, the ALJ explained that she relied, in part, upon the opinion of consultative examiner Aharon Wolf, M.D., who assessed that Plaintiff had moderate limitations in gripping, climbing, squatting, bending, and lifting as a result of bilateral knee pain, bilateral hand pain, and arthritis. T. 50, 336. Her grip strength was 4/5 in both hands, squat was 25% of normal, she had difficulty with heel and toe walking, and limited range of motion in her knees. T. 335. The remainder of Dr. Wolf's examination results were benign. T. 335-36.

An ALJ can accept portions of a medical opinion and reject others. Barry v. Colvin, 606 Fed. Appx. 621, 624 (2d Cir. 2015) (an ALJ is not bound to include in the RFC finding every specific limitation assessed by a consultative examiner, and could, instead, exercise discretion in reviewing the record evidence in its totality); Pellam v. Astrue, 508 Fed. Appx. 87, 90 (2d Cir. 2013) (consultative examiner's opinion largely supported the ALJ's RFC determination even if ALJ did not credit all of the consultant's findings).

The remainder of the record evidence also does not support the restrictive limitations assessed by Dr. Raudenbush. In reaching her RFC finding, the ALJ also relied on plaintiff's treatment notes, as she is permitted to do T. 49-50. Monroe v. Comm'r of Soc. Sec., 676 Fed. Appx. 5, 9 (2d Cir. 2017) (noting that an ALJ could rely on treatment notes to formulate the RFC assessment, and rejected the argument that a medical opinion was required). As discussed in the

decision, Plaintiff's clinical signs did not suggest that an RFC for light work was unreasonable. T. 50.

The ALJ noted that Plaintiff underwent conservative treatment for osteoarthritis in her knees, that a May, 2014, x-ray of the bilateral knees revealed mild degenerative change in the right knee, and that physical therapy was effective in treating Plaintiff's pain. T. 49. Medical records from August and September of 2014 (University of Rochester Medical Center), similarly note that Plaintiff had tenderness of the knee, but no joint warmth, swelling, or deformity. T. 49, 341-47. The following month, the Plaintiff was seen at University Orthopaedic Associates and was observed to have some decreased joint space in the medial compartment of the left knee and minimal arthritic changes of the patellofemoral joint. Id.

A November, 2014, MRI revealed a complex tear of the posterior horn and body of the medial meniscus and her treatment notes from March, 2015 (University Orthopaedic Associates), showed well-preserved motion and no assistive device. T. 49, 433. Orthopedic surgeon Michael Maloney, M.D., recommended weight loss, activity modifications, medication, and physical therapy, and advised that she continue to treat her pain conservatively. Steroid injections provided "significant" relief. T. 50, 365, 428-443.

The ALJ noted from the medical record that Plaintiff was obese with mild osteoarthritis of the left knee. She wore a knee brace when leaving the house for a long period of time, and elevated her

leg for relief, although no doctor advised her to do so. She used a cane that was prescribed. The vocational expert testified that Plaintiff could perform the above-mentioned jobs in the RFC while using either a cane or footstool for elevation. T. 50.

In addition to the diagnostic findings and treatment notes, the ALJ's RFC finding is supported by Plaintiff's activities of daily living, which the ALJ found were only mildly restricted (she performed some cooking, laundry, shopping, childcare, and driving). T. 47, 90-91, 331, 335, 366, 391. Such activities can be consistent with light work. See Cichocki v. Astrue, 729 F.3d 172, 178 (2d Cir. 2013) (ALJ properly considered the claimant's reported daily activities, such as walking her dog and cleaning her house, in support of an RFC finding for light work); Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's varied activities, including occasional vacuuming, washing dishes, driving, watching television, reading, and using the computer, supported an RFC finding for light work). In short, the ALJ's RFC finding is supported by Dr. Wolf's opinion, the treatment notes and examination findings which show a modest improvement with treatment, and her activities of daily living.

An ALJ must also provide "good reasons" for not granting controlling weight to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998). Where, as here, a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight

assigned" to that opinion, and consider the factors identified in the SSA regulations. Halloran v. Barnhart, 362 F.3d 28, 33; see also 20 C.F.R. §§ 404.1527(c), 416.927(c).[2]

Here, the ALJ explained that Dr. Raudenbush's opinion which provided that Plaintiff could only lift five to 10 pounds was essentially based on plaintiff's subjective complaint of hand pain which was contrary to Dr. Wolf's finding that Plaintiff had intact hand and finger dexterity and only slightly limited which was contrary to Dr. Wolf's finding that Plaintiff had intact hand and finger dexterity. T. See Lewis v. Colvin, 548 Fed. Appx. 675, 678 (2d Cir. 2013) (affirming ALJ's determination where assessment appeared to be based on the claimant's subjective complaints). The ALJ also pointed to Plaintiff's lack of a treatment relationship with Dr. Raudenbush. T. 50. These constitute "good reasons" for rejecting her opinion. See Riccobono v. Berryhill, No. 17-CV-01371, 2019 WL 569563, at *10 n.7 (E.D.N.Y. Feb. 11, 2019)("limited treatment, negative treatment findings, reliance on Plaintiff's subjective complaints, and lack of corroborating treatment records—are plainly good reasons to afford little to no weight to [a treating physician's] opinion.").

The ALJ properly considered the opinion evidence along with the other medical evidence in the record. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source

---

[2] The same factors are considered when evaluating the weight to give other medical opinion evidence. 20 C.F.R. §§ 404.1527(c), 416.927(c).

presents evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that opinion); 20 C.F.R. §§ 404.1527(c);(4)416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

Finally, contrary to Plaintiff's assertion, there was no reason for the ALJ to re-contact Dr. Raudenbush for a clarification. Pl. Mem. 14. See Mitchell v. Astrue, 501 Fed. Appx. 26, 29 (2d Cir. 2012) (the mere fact that a treating source opinion was unsupported or internally inconsistent does not mean that the ALJ was required to contact him); see also Rosa v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information . . . ." (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996))).

## D.  Mental Impairments

Plaintiff argues that the ALJ erred by not incorporating her mental limitations into the RFC finding. Pl. Mem. 17.

At step two of the analysis, the ALJ found that Plaintiff's major depressive disorder was not severe based on the opinion of the consultative examiner that Plaintiff had no mental limitations. Along with the opinion of the consultative examiner, the ALJ also considered Plaintiff's ability to perform daily activities, and

that she did not have a consistent and ongoing treatment for her mental health complaints. T. 47, 332.

Plaintiff's argument that the ALJ failed to consider her mental impairments in determining her disability and, therefore, the RFC fails for two reasons. First, the ALJ gave "no weight" to the opinion of Ellen Kaminski, LCSW-R, who concluded that Plaintiff was "incapable of employment." T. 50, 447. That conclusion, as the ALJ pointed out, did not quantify the extent of Plaintiff's limitations. T. 50. Conversely, a consultative examiner found that Plaintiff had no limitations and a normal mental status examination. T. 47, 329-32. An ALJ's "Step Four findings need only 'afford[ ] an adequate basis for meaningful judicial review, appl[y] the proper legal standards, and [be] supported by substantial evidence such that additional analysis would be unnecessary or superfluous[.]'" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014)(quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). Thus, while the ALJ did not include any mental limitations in her RFC assessment, she considered the evidence of Plaintiff's mental impairments when formulating the RFC, which is likewise consistent with her step two finding of non-severity. See e.g., See Reyes v. Colvin, 2016 WL 56267, *6 (W.D.N.Y. 2016) ("although the ALJ did not specifically include stress limitations in his RFC assessment, his reliance on the findings and observations of the consultative medical sources in terms of their consideration of plaintiff's stress-related functional limitations

. . . represents the kind of thorough, individualized mental RFC evaluation contemplated by . . . the overall requirements of the [regulations].”); <u>Sherrill B. v. Comm'r of Soc. Sec.</u>, No. 17-CV-754, 2018 WL 4150881, at *9 (N.D.N.Y. Aug. 30, 2018) (“Because the ALJ considered the objective medical evidence, Plaintiff’s daily activities and the hearing testimony in determining that Plaintiff’s diagnosed depression and anxiety did not impose any limitations on her RFC, the ALJ’s determination was supported by substantial evidence.”).

Second, the ALJ found, after evaluating step two, that Plaintiff could perform unskilled work. T. 50-51, <u>see</u> Social Security Ruling (“SSR”) 00-4p, 2000 WL 1898704 *3 (SVP of 1-2 corresponds with unskilled work). Although Plaintiff argues that the ALJ found that she had a moderate limitation in social functioning, Pl. Mem. 17, a finding that a claimant was “mildly” or “moderately” impaired in functional areas would not preclude Plaintiff’s ability to perform the basic mental demands of unskilled work. T. 47. <u>See</u> <u>Zabala v. Astrue</u>, 595 F.3d 402, 409 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in her work-related functioning). Plaintiff’s limitation to light, unskilled work therefore accommodates Plaintiff’s RFC as written, as well as a moderate limitation in social functioning. <u>See</u>, <u>e.g.</u>, <u>Martinez v. Comm'r of Soc. Sec.</u>, 2017 WL 2633532, *7 (N.D.N.Y. 2017) (finding RFC determination for unskilled work is not

-13-

necessarily inconsistent with moderate mental limitations); Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (finding RFC determination limiting claimant to simple, routine, repetitive tasks was consistent with ALJ's assessment that claimant had moderate difficulties with concentration, persistence and pace).

Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence and is free of legal error and is affirmed.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings (Dkt. #10) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. #13) is granted. The Clerk of the Court is directed to enter judgment in favor of the Defendant in accordance with this Decision and Order. The Clerk is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          March 25, 2019